Glenn MATTHEWS and Maintenance Supply Co., Inc., Appellants,

v.

UNISOURCE WORLDWIDE, INC., Appellee.

Superior Court of Pennsylvania.

Submitted Oct. 20, 1999.

Filed March 1, 2000.

Mary E. O'Laughlin, Philadelphia, for appellants.

Howard D. Scher, Philadelphia, for appellee.

Before CAVANAUGH, KELLY and BECK, JJ.

BECK, J.:

¶ 1 This is an appeal from the denial of Glenn Matthews' post trial motion seeking removal of a nonsuit in an action for breach of a restrictive covenant in a written employment contract. We find that in granting a nonsuit in this case the trial court misapplied the law, which provides that a nonsuit may only be granted in the limited circumstance where the plaintiff has clearly failed to establish the elements of the cause of action, giving the

plaintiff the benefit of all favorable evidence and inferences therefrom. Therefore, we reverse.

¶ 2 Appellant Matthews claims that Unisource Worldwide Inc. (Unisource) breached the restrictive covenant in dealing with customers that Matthews brought with him when he went to work for Unisource or customers he developed while working there. Under Matthews' employment contract, dated January 17, 1992, Matthews agreed to work as a commissioned salesman for Unisource's predecessor, Weiss Brothers Miquon, Inc. ("Weiss"). The contract provided, *inter alia:*

5. ...it is specifically understood and agreed by the parties that your employment by Weiss is on a "trial basis" through April 30, 1992, and that either party may choose to terminate your employment and this Agreement for any reason whatsoever without any liability whatsoever.

. . . .

8. After termination for any reason, Weiss shall not sell, unless authorized in writing by you to do so, any of your customers. Your customers are reflected on the attached Exhibit "A", to which will be added new customers brought to Weiss by you during your employment.

¶ 3 In July of 1992, six months after the parties entered the agreement, Weiss terminated the contract during an extension of the trial period referred to above. Thereafter, Matthews continued working for Weiss as an employee-at-will until August 10, 1994, when he was fired.

¶ 4 Matthews instituted a civil action for breach of contract. A non-jury trial began on February 2, 1999. On February 5, 1999, the trial court granted Unisource's motion for nonsuit on the basis that Matthews' customer list, Exhibit A, was not attached to the contract in the complaint or introduced into evidence at the trial. The court found that Matthews had failed to establish that the parties had agreed to an essential term of the contract, *i.e.,* the identity of Matthews' customers. Alternatively, the trial court found that even had the parties agreed to that term, the contract was terminated during the trial period and, therefore, Unisource was not liable to Matthews. Matthews' post trial motion seeking removal of the nonsuit was denied. This timely appeal followed.

¶ 5 On appeal, our standard of review from the entry of a compulsory nonsuit is well settled:

[I]t is proper only if the fact finder, viewing all of the evidence in favor of the plaintiff, could not reasonably conclude that the essential elements of a cause of action have been established. When a nonsuit is entered, the lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement. A compulsory nonsuit can only be granted in cases where it is clear that a cause of action has not been established and the plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence, resolving any conflict in favor of the plaintiff. The fact finder, however, cannot be permitted to reach a decision on the basis of speculation or conjecture.

*Joyce v. Boulevard Physical Therapy & Rehab.,* 694 A.2d 648, 652–53 (Pa.Super.1997).

¶ 6 To prevail on a breach of contract claim, a plaintiff must establish that there was an agreement which the defendant breached, thereby causing damages to the plaintiff. *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053 (Pa.Super.1999).

¶ 7 As noted above, the central issue in this case arises because neither party was able to produce Exhibit A to the employment agreement. At trial, Matthews testified that Exhibit A had been attached to the contract at one time. R.R. at 158a. Matthews further testified that the names

and addresses of his customers were entered into Weiss' records so that Matthews would be properly credited for sales to those customers. R.R. at 159a. Matthews also produced computerized salesman reports from Weiss' own computer system that reflect that Matthews' customers were so entered, and were updated during Matthews' employment with Weiss as Matthews secured new customers. *See* R.R. 158a–164a.

■ ¶ 8 The question to be determined is whether the fact that Exhibit A is missing means that the contract lacks an essential term and is unenforceable or simply means that the contract contains an ambiguity that can be remedied by permitting parol evidence to clarify the intention of the parties as to the identity of those customers who would fall within the restrictive covenant. We find the under the facts of this case the missing exhibit rendered the contract ambiguous and that parol evidence is admissible to remedy the ambiguity. *See generally Samuel Rappaport Family Partnership v. Meridian Bank,* 441 Pa.Super. 194, 657 A.2d 17 (1995).

■ ¶ 9 We emphasize that in interpreting a contract, the ultimate goal is "to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." *Halpin v. LaSalle University,* 432 Pa.Super. 476, 639 A.2d 37, 39 (1994). In ascertaining that intent, we may not disregard a provision in the parties' agreement if a reasonable meaning can be drawn therefrom. *Marcinak v. Southeastern Greene School District,* 375 Pa.Super. 486, 544 A.2d 1025, 1027 (1988). Finally, the course of the parties' performance under a contract is always relevant in interpreting that contract. *Atlantic Richfield Co. v. Razumic,* 480 Pa. 366, 390 A.2d 736, 741 n. 6 (1978).

¶ 10 The record supports the conclusion that the parties intended to enter into an agreement that would include a reserva-

tion of Matthews' customers to Matthews. Neither party disputes the fact that this was their intent upon entering into this contractual relationship. The record also demonstrates that appellee's own records identify all or some of Matthews' customers and that appellee engaged in a course of conduct providing Matthews credit for sales to his customers. Weiss maintained records in their salesperson database which consisted of a list of customers that Matthews brought to Weiss and also customers he later developed. Weiss paid Matthews the commission amount specified in his contract based upon sales to customers maintained in Weiss' salesperson database. Weiss' action during the course of Matthews' employment clearly indicates that Weiss was operating pursuant to what it viewed as a binding contract.

¶ 11 Thus, it is indisputable that these parties intended to restrict Unisource's conduct after the termination of this contract by excluding certain customers, *i.e.,* those brought to Unisource by Matthews, whether at the outset of his employment or thereafter. There is no other reasonable interpretation of the contract document. If we were to interpret the contract to mean that there were no such customers because Exhibit A is missing, we would be ignoring the clear import of the first sentence of clause 8, quoted above, in which the parties expressed their intent to restrict Unisource's post-termination conduct. Based on the evidence Matthews presented, the parties entered into this agreement because of Matthews' prior experience in this industry and his ability to bring new business to Unisource. It is illogical to construe the contract so as to exclude the correlative protections that Matthews negotiated for that business whenever his employment with Unisource terminated.

■ ¶ 12 In sum, viewing the evidence in the light most favorable to Matthews, as we must in reviewing a grant of nonsuit, we find that the documentary evidence, coupled with Matthews' testimony con-

cerning the customers he brought to Unisource and the conduct of Unisource throughout the parties' relationship, was sufficient for these purposes. We express no opinion, of course, as to whether Matthews' should ultimately prevail on his claim, which must be decided after Unisource has the opportunity to present its countervailing evidence.

¶ 13 Alternatively, the trial court held that Unisource was not liable because Matthews was terminated during the trial period. The court construed the language of paragraph 5, wherein the contract provides that during the trial period either party may terminate the contract "for any reason whatsoever without any liability whatsoever," to mean that Unisource had no liability under the restrictive covenant as long as the contract was terminated during the trial period. We disagree.

 ¶ 14 We find that the trial court erred as a matter of law in finding that the termination clause preempts the restrictive covenant in this contract. This is an unreasonable reading of the contract, which contravenes the clearly expressed intention of the parties set forth in the restrictive covenant. Obviously Matthews negotiated the restrictive covenant in order to protect his existing client base. It is illogical to conclude that Matthews would agree to a provision which would allow Unisource to evade its obligation not to sell to Matthews' customers merely by firing him during the trial period. To interpret the contract in this manner would allow Unisource to take over Matthews' customers if it acted quickly and terminated Matthews as soon as Unisource had established relationships with those customers, but would not allow Unisource to take those customers if it had a longer term relationship with Matthews.

¶ 15 We find nothing in the contract that suggests such an intent. Indeed, the contract language belies such an interpretation. Clearly paragraph 5 means that an early termination "for any reason" would not give rise to liability by either party for wrongful termination. It does not mean that, for example, Unisource could terminate Matthews during the trial period and not pay him whatever commissions might be due him. Equally, the termination provision cannot fairly be interpreted to mean that an early termination renders the restrictive covenant unenforceable. The trial court erred in construing the termination provision in this overly broad fashion.

¶ 16 Reversed and remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.