MARTIN STONE QUARRIES,
INC., Appellant

v.

ROBERT M. KOFFEL BUILDERS,
Robert M. Koffel, Inc., Owner or Reputed Owner and Terry Sacks, Contractor, Michael W. Schank and Lorraine M. Schank, Diane E. Frangiose, Mildred Todaro and Theodora Levchenco, Robert E. Wagner and Jane T. Wagner Joseph J. Hirsch, III and Linda D. Hirsch, Andrew M. Gdonski and Marlene P. Gdonski, Charles R. Seaton, Jr. and M. Christine Seaton, Thomas Schnaubelt and Mary Schnaubelt, Anthony L. Green and Evelyn Harper Green, Thomas H. Rodgers and Donna A. Rodgers, Donald Hills and Cynthia J. Hills, Steven C. Breisch and Cynthia A. Breisch, Michael D. Jarema, III Appellees.

Superior Court of Pennsylvania.

Argued Sept. 25, 2001.

Filed Nov. 14, 2001.

James L. Davis, Reading, for appellant.

Mark C. Clemm, Plymouth Meeting, for appellees.

Before: HUDOCK, STEVENS, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Martin Stone Quarries, Inc. appeals the striking of its mechanics' lien following the denial of its post-trial motions.[1] We affirm.

This action commenced October 24, 1988, by the filing of a Mechanics' Lien Claim naming as defendants Robert M. Koffel Builders, Robert M. Koffel, Inc. and Terry Sacks. Koffel Builders was the general contractor and Koffel, Inc. was the owner of Boulder Heights Development. Sacks was a paving and excavating contractor who contracted with [appellant] to supply the building materials used to construct the roads in the development. The amount claimed in the Mechanics' Lien filing was Thirty–Six Thousand Four Hundred Four Dollars and Seventy-three Cents ($36,404.73), and was for materials supplied between January 19th and June 22, 1988. The description of the property

---

1. Originally, appellant attempted to appeal the trial court's September 29, 2000, order denying its post-trial motions. "Such an appeal would be interlocutory absent final judgment and this Court would be without jurisdiction to hear it." *Stecher v. Ford Motor Co.,* 779 A.2d 491, 492 n. 1 (Pa.Super.2001). The trial court's subsequent entry of final judgment, however, perfected the appeal so that we may reach the merits. *See id.* We have corrected the caption accordingly.

subject to the mechanics' lien [was] described as "Boulder Heights Development, Spring Mount, Lower Frederick Township, Montgomery County, Pennsylvania."

A subdivision plan for a housing development of thirty (30) separate properties called Boulder Heights was recorded with the Recorder of Deeds of [Montgomery] County on May 12, 1987. Three (3) of the lots in the subdivision[,] Nos. 6, 8, and 18, were conveyed by Koffel, Inc. to new owners before the Mechanics' Lien Claim was filed. Lot No. 6 was conveyed to D. Tom Bell and Martha J. Bell, by deed dated July 29, 1988 and recorded on August 2, 1988. Lot No. 8 was conveyed to Andrew Gdonski and Marlene Gdonski by deed dated July 31, 1988 and recorded on September 6, 1988. Lot No. 18 was conveyed to Steven Breisch and Cynthia A. Leh by deed dated September 30, 1988 and recorded on October 4, 1988. The conveyance of all the other lots took place following the filing of the Mechanics' Lien Claim on October 24, 1988. Formal notice of the intention to file a claim was made on September 20, 1988. . . . Service of the Claim was made on October 26, 1988 and the Affidavit of Service filed twenty-one (21) days later on Wednesday, November 16, 1988. The only owner to receive notice and service was Robert M. Koffel, Inc.

The Complaint in Mechanics' Lien was filed on October 1, 1990 and served on Sacks and the two Koffel entities within five (5) days thereafter. No service was made on any of the new home[ ]owners at any time thereafter. Between October, 1990 and May, 1995, there was considerable activity, including the filing and ruling on Preliminary Objections and the filing of an Amended Complaint and the entry and withdrawal of appearance of counsel for both sides. A praecipe ordering the case onto the civil trial list was filed on October 26, 1993.

Some time prior to May 25, 1995, the [individual property owners] learned of the claim against their property and also that the [two Koffel entities and Sacks] did not intend to defend in such a way as to protect their interests.[2] Accordingly, [the individual homeowners] filed a Petition to Intervene on May 25, 1995. That petition was granted over the objection of [appellant] on April 8, 1996. While the petition was pending, an order was entered striking the case from the civil trial list on October 3, 1995, presumably because of the pending Petition to Intervene. A year later, on April 17, 1997, counsel for the [two Koffel entities and Sacks] filed a Petition to Withdraw[,] which was granted on July 3, 1997. Some five (5) months later, the [individual homeowners] filed a Motion for Summary Judgment on December 22, 1997, which was ruled upon on November 9, 1999, with the motion being denied and the case [ ] ordered on the trial list. It was finally tried in a Bench Trial on April 20, 2000.

Trial Court Opinion, 6/5/00, at 1–3 (footnote omitted). On June 2, 2000, the trial judge issued an order striking the Mechanics' Lien. Order, docketed 6/5/00. This appeal followed in which appellant raises three issues:

11.[sic] Whether the trial court erred in failing to order a judgment notwithstanding the verdict in favor of [appellant] and against [appellees] where the uncontroverted evidence established that the work performed by [appellant] was performed on a single tract of land

2. Robert F. Morris, Esquire represents all appellees for this appeal.

which had not been subdivided at the time the work was completed, despite the fact that a proposed subdivision plan had been recorded?

\* \* \*

12.[sic] Whether the trial court erred in failing to order a judgment notwithstanding the verdict in favor of [appellant] and against [appellees] when it was clear that [appellant] did not violate the time limit set by 49 P.S. 1701(d), in light of the delays perpetrated by [appellees] and the finding on November 9, 1999, by the Montgomery County Court of Common Pleas, that the delay in the case was not attributable to [appellant]?

\* \* \*

13.[sic] Whether the trial court erred in failing to order a judgment notwithstanding the verdict in favor of [appellant] and against [appellees] as it was bound by prior orders of judges of the same court of common pleas with respect to the 49[P].[S]. 1701(d) delay issue and the 40[P].[S]. 1306(b) apportionment issue in accordance with the coordinate jurisdiction rule[?]

Appellant's Brief at 4–5.

¶ 2 We turn to appellant's third issue first, as it may be dispositive. Appellant claims that previous decisions in this case precluded Judge Lawrence A. Brown from striking the mechanics' lien. Appellant's Brief at 18. Pennsylvania courts "ha[ve] long recognized that under the coordinate jurisdiction rule, judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions. The . . . rule is premised on the sound jurisprudential policy of fostering finality in pre-trial proceedings, thereby promoting judicial economy and efficiency." *Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 705 A.2d 422, 425 (1997) (citations omitted). In deciding whether to apply the coordinate jurisdiction rule,

the Court must look to "where the rulings occurred in the context of the procedural posture of the case" rather than to "whether an opinion was issued in support of the initial ruling." *Id.* (citations omitted).

"Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question."

*Id.* (quoting *Goldey v. Trustees of the Univ. of Penn.*, 544 Pa. 150, 675 A.2d 264, 267 (1996)). The motions at hand are very different as the original motion was a motion for summary judgment and the later determination was a final judgment. The issues involved were essentially the same, however. The first order denied appellees' motion for summary judgment based on the timeliness and apportionment requirements of the Mechanics' Lien Law. The trial court subsequently entered final judgment for appellees, because it found that appellant did not abide by these two requirements. Essentially, the trial judge overruled the exact same determination of the prior judge.

"[A] court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court or by a higher court in the earlier phases of the matter. Among the related but distinct rules which make up the law of the case doctrine are that: . . . upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a

legal question previously decided by the transferor trial court."

*Id.* (quoting *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1331 (1995)). Consequently, it seems at first glance that Judge Brown erred in overruling the decision of the first trial judge. This does not end the matter though. "[T]he purpose of the [coordinate jurisdiction] rule is judicial economy and efficiency and . . . the rule should not be applied where to do so would defeat that very purpose." *Goldey,* 675 A.2d at 266. We are faced with one such problem here. If the second order was in error, it was only because the judge made the ruling after trial rather than during post-trial motions. Such a decision would be defensible in the later situation as long as the second judge determines that the first judge made "a factual or legal mistake." *Riccio,* 705 A.2d at 425.

¶ 3 As we will discuss below, the first judge in this case erred in his determination of timeliness. It strains credulity to believe that the coordinate jurisdiction rule would require us to reverse a proper decision simply because it was made at the inappropriate time. Thus, we find that despite the second judge's error in overruling the initial determination regarding appropriation and timeliness, justice requires us to address the merits. Our decision also serves efficiency, as we would otherwise merely reverse and remand so that appellees could file an appeal.

 ¶ 4 We now turn to appellant's two remaining issues on appeal. "The Mechanics' Lien Law is a creature of statute in derogation of the common law," and "any questions of interpretation should be resolved in favor of a strict, narrow construction." *Delmont Mech. Serv. v. Kenver Corp.,* 450 Pa.Super. 666, 677 A.2d 1241, 1244 (1996) (citation omitted). "[T]o effectuate a valid lien claim, the contractor or subcontractor must be in strict compliance with the requirements of the Mechan-

ics' Lien Law." *Id.* At issue here is whether appellant failed to comply with the two aforementioned provisions of the Mechanics' Lien Law.

 ¶ 5 First, 49 P.S. § 1306(b) states: (b) Apportionment of claims. Where a debt is incurred for labor or materials furnished by the same claimant *for work upon several different improvements which do not form all or part of a single business or residential plant,* the claimant shall file separate claims with respect to each such improvement, with the amount of each claim determined by apportionment of the total debt to the several improvements . . . .

49 P.S. § 1306(b) (emphasis added). In this case, we must conclude whether the property in question consisted of "a single business or residential plant." Appellant claims that this property "was but one (1) piece of real estate for which a proposed subdivision plan had been recorded; it was a single 'business plant.'" Appellant's Brief at 10. Appellant does not dispute that Koffel, Inc. recorded a thirty-property subdivision plan for the property with the Montgomery County Recorder of Deeds on May 12, 1987. Trial Court Opinion, 6/5/00, at 1. Also, appellant did not supply the building materials between January 19 and June 22, 1988, which was well after Koffel, Inc. recorded the subdivision plan. Appellant argues, though, that because the proposed subdivision was not yet divided into lots, it did not need to comply with the apportionment requirement of subsection 1306(b).

¶ 6 Appellant cites *Metco, Inc. v. Moss Creek, Inc.,* 529 Pa. 53, 601 A.2d 802 (1992), to support its position, but that case provides no relief from this obligation. In *Metco,* the plaintiff filed a mechanics' lien against five condominium units. *Id.* at 803. The trial court filed an order striking the lien because of the plaintiff's failure to apportion its claim, and this Court af-

firmed. *Id.* Our Supreme Court reversed, relying on 68 Pa.C.S. § 3409(b), which expressly allows a claimant to file one claim against several condominiums without apportionment. *Id.* at 804. Since the present case does not involve condominiums, that statute and this portion of *Metco* do not apply.

¶ 7 While the Court in *Metco* did analyze subsection 1306(b), that analysis does not bolster appellant's argument. In addressing that subsection, the Court stated, "a condominium development is a 'single residential plant,' as condominiums, in contrast to other forms of multiple housing, have legal characteristics which make pre-filing apportionment of claims impracticable if not impossible." *Id.* Because condominiums have unusual characteristics, such as common elements serving all units, the Court distinguished them from other types of housing, such as "townhouses," "separate dwelling houses," and "a group of 20 houses on separate lots." *Id.* at 805. *Metco* provides little guidance to the present case where we are dealing with houses on separate lots rather than condominiums.

¶ 8 Before the Supreme Court handed down *Metco,* a panel of this Court decided *Meyers Plumbing and Heating Supply Co. v. Caste,* 350 Pa.Super. 482, 504 A.2d 942 (1986), which is directly relevant to this case. In *Meyers,* the plaintiff filed a mechanics' lien against property containing forty-two townhouses but failed to apportion the claims. *Id.* at 943. The trial court struck the lien, and our Court affirmed holding that forty-two townhouses did not constitute one "plant." *Id.* In doing so, the Court noted that its holding was consistent with a previous trial court's ruling that 20 separate houses on 20 separate lots was not one plant. *Id.* at 945. We find the houses in the present subdivision more similar to the townhouses in *Meyers* than the condominiums in *Metco.* As a result, appellant was required to ap-

portion its mechanics' lien claim among the houses of the subdivision.

¶ 9 Appellant argues however that, even if *Meyers* applies, there is a crucial difference: the townhouses in *Meyers* were completed, whereas the houses in the present case were not. While we agree that the difference exists, we disagree that it is a crucial distinction. Appellant clearly knew that Koffel, Inc. was going to subdivide the property. Not only did appellant deliver materials to build various roads in the development, but it also had record notice of the subdivision plan. Trial Court Opinion, 6/5/00, at 1. Therefore, the trial court did not err in striking the lien on this basis.

■ ¶ 10 Next, we must decide whether the trial court correctly found that appellant failed to comply with 49 P.S. § 1701(d):

(d) Limitation on Time of Obtaining Judgment. A verdict must be recovered or judgment entered within five (5) years from the date of filing of the claim. Final judgment must be entered on a verdict within five (5) years. If a claim is not prosecuted to verdict or judgment, as provided above, the claim shall be wholly lost: Provided, however, That in either case, if a complaint has been or shall be filed in the cause and if the cause has been or shall be at issue, *all time theretofore or thereafter consumed in the presentation and disposition of all motions and petitions of defendants, substituted defendants and intervenors in the cause, and in any appeal or appeals from any order in the cause, from the date of perfection of such appeal to the date of return of the certiorari from the appellate court to the court of common pleas, shall be excluded in the computation of the five (5) year period herein provided.*

49 P.S. § 1701(d) (emphasis added). Here, appellant filed its claim on October 24,

1988, and the trial took place eleven years and one hundred seventy-nine days later, on April 20, 2000. Trial Court Opinion, 6/5/00, at 5. The trial court calculated that five years and two hundred twenty-seven days were excludable time, because those days were "consumed in the presentation and disposition of all motions and petitions of defendants, substituted defendants and intervenors in the cause" pursuant to subsection 1701(d). *Id.* Appellant contests the trial court's calculations but provides us with no alternate figures. It merely states that "this case could have been tried much earlier" if not for numerous motions and petitions filed by appellees. Appellant's Brief at 14. The trial court took all of those motions into account and undertook a serious review of the record in determining excludable time. Appellant cannot point us to a specific error. Therefore, appellant is without relief.

¶ 11 Judgment affirmed.