J-A13016-15
J-A13017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| OAKDALE EQUIPMENT CORPORATION, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MEADOWS LANDING ASSOCIATES, LP, | |
| Appellee | No. 1573 WDA 2014 |

Appeal from the Order August 22, 2014
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2013-3524

| | |
|---|---|
| RICHARD LAWSON EXCAVATING, INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MEADOWS LANDING ASSOCIATES, LP, | |
| Appellee | No. 1866 WDA 2014 |

Appeal from the Order Entered October 17, 2014
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2013-2053

BEFORE:  PANELLA, SHOGAN, and OTT, JJ.          **FILED JULY 08, 2015**

MEMORANDUM BY SHOGAN, J.:

Oakdale Equipment Corporation ("Oakdale") and Richard Lawson

Excavating, Inc. ("Lawson") appeal from orders sustaining the preliminary

objections of Meadows Landing Associates, LP ("MLA") to complaints for judgment on mechanics' liens.[1]  We affirm.

MLA is a real estate development company.  In March of 2012, MLA contracted with Lawson for work on MLA's 200-acre subdivision in Washington County called Meadows Landing ("the Project").  The work included "Mobilization, Earthwork, Topsoil, Grading, Excavating, Erosion and Sedimentation, Pond Construction, Stormwater and Sanitary, Keyways/Benching and Utilities per the Phase 1 drawing of Gateway Engineers and Victor-Wetzel Associates."  American Institute of Architects Document A107, 3/29/12, at 1.  In turn, Lawson contracted with Oakdale for the rental of heavy equipment to be used on the Project.

On April 2, 2013, MLA sent a notice of termination to Lawson for failure to achieve substantial completion of its subcontracted work by August 31, 2012.  As of the termination, Oakdale asserted it was owed $239,414.14 for the rental of heavy equipment used on the Project.  Mechanics' Lien Claim, 6/17/13, at ¶ 6.  Lawson contended it was owed $632,102.00 for work it performed on the Project.  Mechanics' Lien Claim, 4/17/13, at ¶ 6.[2]

---

[1]  The trial court had consolidated the above-captioned cases for pre-trial discovery purposes.  Given the commonality of the record, we have consolidated the cases for disposition on appeal.

[2]  The two underlying cases on appeal are part of a "family" of six cases, two assumpsit actions and four mechanics' liens, filed among Oakdale, Lawson,
*(Footnote Continued Next Page)*

<u>Oakdale's Mechanics' Lien Claim and Appeal</u>

Oakdale filed a mechanics' lien against MLA on June 17, 2013. Four days later, counsel entered an appearance for MLA. Upon defense counsel's request, Oakdale filed a complaint to obtain judgment on the mechanic's lien on June 26, 2013. Thereafter, on July 18, 2013, MLA filed a consented-to petition to discharge the mechanics' lien upon payment into court. The same day, the trial court granted the petition and ordered Oakdale's mechanics' lien discharged upon payment of $239,414.14 into court. On July 24, 2013, MLA filed preliminary objections ("POs") to Oakdale's complaint, alleging that Oakdale failed to comply with the notice requirements of the Mechanics' Lien Law, 49 P.S. §§ 1101–1902, and, therefore, the complaint should be dismissed. Two days later, MLA paid the full sum into court, thereby discharging Oakdale's mechanics' lien. More than one year later, the trial court sustained MLA's POs and dismissed Oakdale's complaint on August 22, 2014. This timely appeal followed. Oakdale and the trial court complied with Pa.R.A.P. 1925.

On appeal, Oakdale presents the following questions for review:

> 1. Did [MLA's] payment into Court pursuant to *49 P.S. 1510* to discharge the lien result in the waiver of the right to file preliminary objections?

*(Footnote Continued)* ─────────────────

MLA, and Harmony Medical Center, the owner of Meadows Landing Lot 9A. **See** Trial Court Opinion, 12/2/14, at 1 (listing names, court terms, and docket numbers of six cases).

      2.    Did [MLA], by its attorneys, waive service of the Mechanics' Lien Claim by its active participation in the case, thereby removing any requirement to file an affidavit of service?

      3.    Did [Oakdale's] filing on June 26, 2013, of its Complaint to Obtain Judgment on Mechanics' Lien Claim satisfy [Oakdale]'s obligation to file an affidavit of service of a written notice of its underlying mechanics' lien claim within 20 days of serving such claim, where: 1) the mechanics' lien claim was filed on June 17, 2013; 2) the mechanics' lien claim was referenced in and attached to the Complaint; and 3) the Complaint contained a certificate of service confirming that it was served on [MLA] on June 25, 2013?

      4.    Where [MLA], through its attorneys, had actual notice of both the Mechanics' Lien Claim and the Complaint to Obtain Judgment on Mechanics' Lien Claim and suffered no prejudice as the result of [Oakdale's] failure to file a separate affidavit of service for the Mechanics' Lien claim itself, does dismissal of the case based on such a technicality constitute reversible error?

Oakdale's Brief at 5–6.

Our standard of review for an order dismissing a mechanics' lien claim

based upon a preliminary objection in the nature of a demurrer is as follows:

When reviewing the dismissal of a [mechanics' lien claim] based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. Moreover, we review the trial court's decision for an abuse of discretion or an error of law.

- 4 -

***Neelu Enterprises, Inc. v. Agarwal***, 58 A.3d 828, 830 (Pa. Super. 2012) (citation omitted).

Oakdale first argues that MLA's payment of funds into court to discharge the mechanics' lien foreclosed MLA's right to file POs. Therefore, Oakdale contends, the trial court erred in considering MLA's POs. Oakdale's Brief at 12. In support of its position, Oakdale relies on section 1510 of the Mechanics' Lien Law, which provides as follows:

> **§ 1510. Discharge of lien or reduction of lien**
>
> **(a)   Cash deposit.** Any claim filed hereunder shall, upon petition of the owner or any party in interest, be discharged as a lien against the property whenever a sum equal to the amount of the claim shall have been deposited with the court in said proceedings for application to the payment of the amount finally determined to be due.

49 P.S. § 1510(a).

The trial court rejected Oakdale's challenge with the following rationale:

> A lien cannot be discharged without the payment.[4] As explained above, the payment was made *after* the filing of Amended [sic] Preliminary Objections.
>
> [4] "Any claim filed hereunder shall, upon petition of the owner or any party in interest, be discharged as a lien against the property whenever a sum equal to the amount of the claim shall have been deposited with the court in said proceedings for application to the payment of the amount finally determined to be due."  49 P.S. § 1510(a).

Trial Court Opinion, 10/21/14, at 3.

Our review of the record reveals support for the trial court's finding that MLA filed POs on July 24, 2013, two days **before** it paid funds into court to discharge the mechanic's lien. Because MLA's POs were timely, we conclude the trial court did not abuse its discretion or commit an error of law in considering MLA's POs.

Oakdale's remaining three issues are interrelated and concern the notice requirements for perfecting a mechanics' lien; therefore, we shall address them concurrently. In doing so, we recognize that the Mechanics' Lien Law sets forth the following requirements which are essential to perfecting a lien:

> **§ 1502. Filing and notice of filing of claim**
>
> **(a) Perfection of Lien.** To perfect a Lien, every claimant must: (1) file a claim with the prothonotary as provided by this act within four (4) months after the completion of his work; and
>
> (2) serve written notice of such filing **upon the owner** within one (1) month after filing, giving the court term and number and date of filing of the claim. An affidavit of service of notice, or the appearance of service, shall be filed within twenty (20) days after service **setting forth the date and manner of service**. Failure to serve such notice or to file the affidavit or acceptance of service within the times specified shall be sufficient ground for striking off the claim.

49 P.S. § 1502(a). The Comment to section 1502 states, "The affidavit of service must be filed even though service is accepted." *Id.* at Cmt. (citing *Day v. Zimmerman, Inc.*, 147 A.2d 332 (Pa. 1959)).

A mechanics' lien is a statutory privilege, not a common law right, and to secure the benefits of the statute, one must strictly adhered to its

requirements. **McCoy's Appeal**, 37 Pa. 125 (1860). "Service requirements under Pennsylvania's Mechanics' Lien law are strictly construed such that a complaint will be stricken if the statutory service requirements are not met[.]" **Regency Investments, Inc. v. Inlander Ltd.**, 855 A.2d 75, 77 (Pa. Super. 2004) (quoting **Tesauro v. Baird**, 335 A.2d 792, 796 (Pa. Super. 1975)). Moreover, we have emphasized that:

> [t]he Mechanics' Lien statute provides an expeditious method to obtain a lien at very little cost to the claimant. Therefore, it is the claimant's principal responsibility to ensure timely service of the claim. If a Mechanics' Lien claim is not timely perfected, however, the claimant still has an adequate remedy in a suit for monetary damages arising out of a breach of contract. The advantage of a Mechanics' Lien is that the lien takes effect sooner and assumes priority over other liens. By contrast, a judgment lien takes effect and priority on the date of entry of judgment. Thus, a claimant who desires a Mechanics' Lien must be vigilant in adhering to the service requirements in the statute.

**Regency Investments**, 855 A.2d at 80.

MLA argued—and the trial court agreed—that Oakdale did not comply with the notice requirements of section 1502(a). Oakdale counters with three arguments. First, Oakdale contends that MLA waived notice of the mechanics' lien claim by its active participation in the case. Oakdale's Brief at 13. According to Oakdale, by the time MLA filed its POs on July 24, 2013, MLA had ruled Oakdale to file a complaint, filed a motion to pay funds into court, and paid funds into court. **Id.** at 15. In the aggregate, Oakdale continues, this was "more than enough participation to signify [MLA's] . . .

waiver of any objection" based on Oakdale's failure to file an affidavit of service. *Id.*

Oakdale cites *Ball v. Barber*, 621 A.2d 156 (Pa. Super. 1992), for the proposition that "[o]nce a party takes action on the merits of a case, he waives his right to object to defective service of process." *Id.* at 158. We distinguish *Ball* on two grounds. First, *Ball* involved a tort claim, not a mechanics' lien. Second, the *Ball* Court determined that the defendant/appellant waived his claim regarding improper service because he took action on the merits of the case:

> In the present case, the record contains a notice of deposition filed by appellant relating to the decedent's school records. Those records have no relevance to the issue of whether appellant was properly served and could have been requested only in connection with the merits of the damages portion of this action relating to damages. Thus, appellant waived his claim regarding improper service of process.

*Id.*

Contrarily, in the case at hand, MLA ruled Oakdale to file a complaint and filed POs related to improper notice, neither of which constitutes action on the merits of the case. *Accord Keller v. LaBarre*, 311 A.2d 683 (Pa. Super. 1973) (holding that, where defendant rules plaintiff to file complaint, objection to jurisdiction is not waived because that is not action on merits and jurisdiction can be raised only by preliminary objections to complaint). Thus, we reject Oakdale's first argument that MLA waived notice of the mechanics' lien claim by its active participation in the case.

Second, Oakdale argues that it did, in fact, file timely written notice of service. Oakdale's Brief at 16. According to Oakdale, it filed the underlying lien on June 17, 2013. Then, in response to MLA's Praecipe for Rule to File Complaint, Oakdale filed its Complaint to Obtain Judgment Upon Mechanics' Lien on June 26, 2013, "only nine days after the Mechanics' Lien Claim itself was filed—well within the twenty-day period specified by the statute." Oakdale's Brief at 18. More specifically, Oakdale proffers paragraph three of the complaint as constituting sufficient written notice of its lien:

> 3. The Plaintiff filed a Mechanics' Lien Claim against the Defendant with this Honorable Court on June 17, 2013[,] at the within term and number. A true and correct copy of the Mechanics' Lien Claim is attached hereto as Exhibit "A."

Oakdale's Brief at 16 (quoting Complaint, 6/26/13, at ¶ 3). According to Oakdale, the complaint "by itself qualifies as the written notice required by Section 1502(a)(2). *A fortiori*, it meets all the requirements when considered in conjunction with the Mechanics' Lien that is attached." ***Id.*** at 18. Oakdale also relies on the complaint's certificate of service as establishing its compliance with "every last requirement of section 1502(a)(2)." ***Id.*** at 19.

Upon review, we are constrained to disagree that Oakdale's complaint and certificate of service "satisfied every requirement of a notice of filing of mechanics' lien set forth in section 1502(a)(2)." Oakdale's Brief at 18. Paragraph three of the complaint recites that the claim was filed against MLA

in the trial court on June 17, 2013, and identifies the court term and docket number. Complaint, 6/26/13, at ¶ 3. The certificate of service indicates that the complaint was served on MLA by email on June 25, 2013. However, nowhere in the complaint or in any other filing does Oakdale **set forth the date and manner of service** of the mechanics' lien on MLA, both of which are statutory requirements for perfecting a lien. 49 P.S. § 1502(a)(2). Consequently, we reject Oakdale's second argument that it complied with the statutory requirements for perfecting a mechanics' lien.

Lastly, Oakdale argues that, because MLA had actual notice of the lien, any procedural defect should be overlooked because no prejudice occurred. Oakdale's Brief at 19. Relying on Pa.R.C.P. 126, Oakdale asserts that the notice requirements should be liberally construed, especially where the trial court "dismissed a Mechanics' Lien claim in excess of $239,000 based upon a pure technicality." Oakdale's Brief at 20. Additionally, Oakdale asserts: "There can be little dispute that Oakdale's conduct in this matter constitutes substantial compliance with Section 1502." *Id.* at 21.

Oakdale does not cite—and our research has not disclosed—any authority for introducing the concepts of prejudice or liberal construction to the notice requirements of 49 P.S. § 1502(a). Indeed, section 1502(a) is strictly construed so that failure to comply with the statutory requirements may result in a complaint being stricken. *Regency Investments*, 855 A.2d at 77.

Nor are we persuaded by Oakdale's reliance on the doctrine of substantial compliance. We have explained that the doctrine of substantial compliance may relax the strict construction of the Mechanics' Lien Law; however, this doctrine applies only to the form of the notice, not the actual service-of-notice requirements mandated by the statute with which a claimant must strictly comply. **Regency Investments**, 855 A.2d at 77 (citation omitted). Here, Oakdale's lien was not defective in the form of the notice. **See Tesauro**, 335 A.2d at 796 (reversing order that struck mechanic's lien where written notice omitted term number and date of filing). Rather, Oakdale failed to comply strictly with the requirements for serving notice mandated by section 1502(a). Thus, the doctrine of substantial compliance is unavailing.

Based on the foregoing, we discern no error of law or abuse of the trial court's discretion. Thus, we affirm the order sustaining MLA's POs and dismissing Oakdale's complaint based on a fatal defect.

<u>Lawson's Mechanics' Lien Claim and Appeal</u>

Lawson filed a mechanics' lien against MLA on April 17, 2013. MLA filed POs on May 15, 2013, alleging, *inter alia*, that Lawson failed to comply with sections 1305 and 1306 of the Mechanics' Lien Law. On July 18, 2013, MLA filed a consented-to petition to discharge the mechanics' lien upon payment into court. The same day, the trial court granted the petition and ordered Lawson's mechanics' lien discharged upon payment of $632,102.00

into court. On July 24, 2013, MLA filed amended POs to Lawson's complaint. Two days later, MLA paid the full sum into court, thereby discharging the lien. After discovery and oral argument on MLA's POs, the trial court sustained MLA's POs and dismissed Lawson's complaint on October 17, 2014. This timely appeal followed. Lawson and the trial court complied with Pa.R.A.P. 1925.

On appeal, Lawson presents the following questions for review:

> 1. Did the owner's payment into Court pursuant to *49 P.S. 1510* to discharge the lien result in the waiver of the right to file preliminary objections?
>
> 2. Did the owner[']s payment into Court pursuant to *49 P.S. 1510* to discharge the lien render the issue of apportionment moot?
>
> 3. Was apportionment required when the work did not constitute "improvements" as that term is defined by *49 P.S. 1201*?
>
> 4. Was it impossible for Plaintiff to apportion its claims in that when the plaintiff began its excavation work, there was nothing but raw land and the lots for the subdivision had not even been laid out?
>
> 5. Was the dismissal contrary to the case law, the Rules of Civil Procedure and the legislative intent behind the Mechanics' Lien law?

Lawson's Brief at 5.

As did Oakdale, Lawson first argues that MLA's payment of funds into court to discharge the mechanics' lien resulted in the waiver of MLA's right to

file POs.  Lawson's Brief at 13.  The trial court rejected Lawson's challenge

with the same rationale it applied to Oakdale's claim:

> A lien cannot be discharged without the payment.[3]  As explained above, the payment was made *after* the filing of Amended Preliminary Objections and therefore the objections were preserved.
>
> > [3] "Any claim filed hereunder shall, upon petition of the owner or any party in interest, be discharged as a lien against the property whenever a sum equal to the amount of the claim shall have been deposited with the court in said proceedings for application to the payment of the amount finally determined to be due."  49 P.S. § 1510(a).

Trial Court Opinion, 12/2/14, at 3.

Our review of the record reveals that MLA filed POs on May 15, 2013,

and amended POs on July 24, 2013, **before** it paid funds into court on

July 26, 2014, to discharge the mechanic's lien.  Because MLA's POs were

timely, the trial court did not err in concluding that they were preserved.

Lawson's second, third, and fourth issues are interrelated and concern

apportionment of a mechanics' lien claim; therefore, we shall address these

issues concurrently.  In doing so, we recognize that the Mechanics' Lien Law

sets forth the following provisions regarding apportionment:

### § 1306. Consolidation or apportionment of claims

\* \* \*

(b) Apportionment of claims. Where a debt is incurred for labor or materials furnished by the same claimant for work upon several different improvements which do not form all or part of a single business or residential plant, the claimant shall file separate claims with respect to each such improvement, with the

amount of each claim determined by apportionment of the total debt to the several improvements, and in such case, the amount of each separate claim may be less than five hundred dollars ($500), provided that the total debt exceeds five hundred dollars ($500). In no other case shall an apportioned claim be allowed.

49 P.S. § 1306(b).

Lawson first argues that MLA's payment of funds into court rendered the apportionment issue moot. Lawson's Brief at 14. According to Lawson, "when the lien against the real property has been discharged, and a bond, cash or more generally 'security' is substituted for the real property, there is no longer any reason for that allocation." *Id.* at 15. In response, MLA asserts that:

[t]hose faced with the filing of a Mechanics' Lien should be able to obtain complete dismissal of a defective lien when the issue was properly raised and preserved so that the security paid into court for the lien discharge, and which is also property albeit in a different form, can be returned.

MLA's Brief at 17. We agree with MLA.

Upon review, we conclude that MLA's payment of funds into court discharged Lawson's mechanics' lien, thereby removing the encumbrance on the individual lots of the Project. Although discharge of the lien allowed MLA to sell the individual lots, it did not determine the validity of Lawson's mechanics' lien claim. That issue was raised by MLA in properly preserved POs based on Oakdale's failure to apportion and decided by the trial court's ruling thereon. Hence, we conclude that MLA's payment into court did not render the apportionment issue moot.

- 14 -

Next, Lawson argues that it could not apportion its mechanics' lien claim because the work it performed on the Project was not an improvement under the Mechanics' Lien Law. Lawson's Brief at 15. In response, MLA relies on the statutory definition of improvement to demonstrate that the work performed by Lawson on the Project constituted improvements and, therefore, was subject to apportionment. MLA's Brief at 19–24. The trial court disposed of this argument with reference to the statutory definition of improvement and Lawson's inconsistent pleading. Trial Court Opinion, 12/2/14, at 4 (citing 49 P.S. § 1201(1) and its October 17, 2014 Order ("This [c]ourt notes that in [Lawson's] response to Count 1, it relied upon 49 P.S. §1305 which provided for noncompletion of an *improvement*, and therefore the responses to Counts 1 and 2 of the defendant's Preliminary Objections are contradictory.")).

The Mechanics' Lien Law defines the term "improvement" as including "any building, structure **or other improvement of whatsoever kind or character erected or constructed on land**, together with the fixtures and other personal property used in fitting up and equipping the same for the purpose for which it is intended." 49 P.S. § 1201(1) (emphasis supplied). Additionally, the terms "erection," "construction," "alteration," or "repair" are defined in the statute as including demolition, removal of improvements, **excavation, grading, filling, paving, and landscaping** when such work is incidental to erection, construction, alteration, or repair, "whether on the

property improved or upon other property, in order to supply services to the improvement." 49 P.S. §§ 1201(10) and 1201(12)(a-c) (emphasis supplied).

In its lien, Lawson averred that it "furnished labor, materials and related equipment to perform earthwork, topsoil, grading, excavating, erosion and sedimentation control, pond construction, storm water and sanitary sewers, keyways, benching and utilities in accordance with the drawings. . ." Mechanics' Lien Claim, 4/17/13, at ¶ 5. Applying the statutory definitions to Lawson's description, we conclude that Lawson's work on the Project constituted an improvement subject to apportionment. *Accord Martin Stone Quarries v. Robert M. Koffel Builders*, 786 A.2d 998 (Pa. Super. 2001) (dismissing lien of company who supplied materials used to construct roads in development for failure to apportion); *see also B.N. Excavating, Inc. v. PBC Hollow-A, L.P.*, 71 A.3d 274, 279 (Pa. Super. 2013) ("[T]he Mechanics' Lien Law expressly provides that property is lienable for excavation performed incidental to the erection or construction of an improvement.") (citing 49 P.S. §§ 1301, 1201(1), (12)(a)).

Lawson also argues that, "as a practical matter, it would also have been impossible . . . to apportion its work among the so-called separate lots that were not even in existence." Lawson's Brief at 20. According to Lawson, during the period when Lawson "was performing its work, none of the lots had been surveyed, so it would have been impossible to determine

- 16 -

the boundary lines for each lot." *Id.* In response, MLA contends, "[T]here was ample ability for Lawson to apportion the lien as he knew where the work was performed, what lots they benefited, and already had a cost breakdown that was prepared as part of the bidding process." MLA's Brief at 25.

The trial court rejected Lawson's apportionment argument with the following analysis:

> The cases against Harmony Medical Center (filed at 2013-2985 and 2013-3525) are liens against Lot 9A of the Subdivision Plan. Lawson's contract with MLA required him to perform work on Phase 1 of the Meadows Landing Plan of Lots. The work was necessary to prepare the lots on which buildings would be constructed for future owners of these parcels of land. Even though Lot 9A was entirely separate and distinguishable from the other lots, Lawson filed four liens all for one sum of $632,102: two liens against Lot 9A and two liens against the other lots. This amount of money requested at the above-captioned case number [2013-2053] is not separate from the amount requested at the three other Mechanics' Liens.

Trial Court Opinion, 12/2/14, at 4–5 (footnote omitted).

Our review of the record supports the trial court's finding that Lawson filed two liens against two separate owners, one lien against Harmony Medical Center for work done on Lot 9A, and the other lien against MLA for work done on Lots 1, 2, 3, 4, 5, 6, 7, 8, 9B, 10, 11, and 12A ("the MLA Lots"). Mechanics' Lien Claim filed at 2013-2985; Mechanics' Lien Claim filed at 2013-2053; Answer to Amended Preliminary Objections, 9/3/13, at ¶ 2; Lawson Deposition N.T., 2/4/14, at 11–13. Despite its separate and

- 17 -

distinct claim against Harmony Medical Center, Lawson requested a lump sum of $632,102.00, which included all of the work it performed on Lot 9A and on the MLA Lots. Moreover, according to the Mechanics' Lien Law, Lawson was required to file each separate claim against each MLA Lot at a different docket number. Instead, Lawson has attempted to assert a single lien against multiple lots. This is improper procedure. ***See Mevers Plumbing and Heating Supply Company v. Caste***, 504 A.2d 942 (Pa. 1986) (striking single lien claim filed by plumbing firm against entire group of residential dwellings for failing to comply with section 1306(b)).

Lawson suggests that it cannot apportion work that is integral and necessary to the entire subdivision prior to the creation of individual lots, the implication being that it is virtually impossible to separate such claims. In other words, Lawson would have this Court craft an exception to the requirements of section 1306(b) for excavators who prepare an entire site for subdivision construction. We decline to create such an exception for two reasons. First, the creation of exceptions to statutory requirements is a matter better left to the legislature. Second, section 1306(b) provides the mechanism by which such claims may be asserted individually. For example, if $1,200.00 worth of topsoil is delivered to the developer for the preparation of four lots, and it is impossible to determine how much of the topsoil was used on each lot, then section 1306(b) would allow the

contractor to apportion $300.00 to each of his four separate mechanics' lien claims, one filed on each of the four lots.

Lawson failed to apportion its claim against MLA as is required by statute. We are required to apply the strictures of the Mechanics' Lien Law rigorously. Thus, we uphold the trial court's order sustaining MLA's POs based on Lawson's failure to comply with 49 P.S. § 1306 and apportion its mechanics' lien claim against MLA.

Lastly, Lawson claims that dismissal of its complaint was contrary to case law, rules of procedure, and legislative intent. Lawson's Brief at 21. We reiterate that issues not included in a Pa.R.A.P. 1925(b) statement of errors complained of on appeal are waived for purposes of appellate review. *See Majorsky v. Douglas*, 58 A.3d 1250, 1259 (Pa. Super. 2012) ("[F]ailure to raise an issue in a Rule 1925(b) statement 'shall' result in waiver of that issue.") (citing *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998)).

Here, Lawson did not include this final issue in its Rule 1925(b) statement. Therefore, it is waived. *Majorsky*, 58 A.3d at 1259.

## Conclusion

Neither Oakdale nor Lawson raises issues that warrant relief from the August 22, 2014 or the October 17, 2014 orders sustaining MLA's preliminary objections to the complaints for judgment on mechanics' liens. Therefore, we affirm those orders.

- 19 -

Orders affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/8/2015